## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CSX TRANSPORTATION INC.,      :
           **Plaintiff**             :
                           :
     **v.**                      :
                           :
SCHUYKILL RAIL CAR INC.,     :
           **Defendant**         :

**Civil No. 1:13-CV-1409**

**Judge Sylvia H. Rambo**

## M E M O R A N D U M

In this civil case, Plaintiff filed a single-count complaint, alleging that Defendant breached its contractual obligations to pay for work Plaintiff preformed on 150 railcar repair invoices.  Presently before the court is Plaintiff's motion for summary judgment (Doc. 29), wherein Plaintiff contends that there exists no issues of material fact and that it is entitled to judgment as a matter of law on the basis that Defendant has acquiesced to the validity of the outstanding invoices at issue by virtue of its failure to dispute the invoices within the time prescribed by Rule 112 of the Association of American Railroad Office Manual.  Defendant argues that more than half of the invoices are disputed, notwithstanding its failure to dispute the charges within the time frame promulgated by the Rules, a position which Plaintiff urges the court to reject on the basis of waiver.  For the following reasons, the court concludes that a genuine issue of material fact exists regarding whether the course of conduct between the parties operates to modify the applicable timing requirements and will grant in part and deny in part Plaintiff's motion for summary judgment.

**I.**        <u>Background</u>

The facts of this case are largely undisputed.  Where a dispute exists, the court views the facts in the light most favorable to Defendant as the nonmoving party and grants Defendant the benefit of all reasonable inferences in accordance with the relevant standard when deciding a plaintiff's motion for summary judgment.

**A.**    <u>Facts</u>

Plaintiff CSX Transportation Inc. ("Plaintiff"), a Virginia corporation that has its principal place of business in Florida, is an interstate rail carrier which is subject to the jurisdiction of the United States Surface Transportation Board and is a member of the Association of American Railroads ("AAR"), an industry trade group representing the major freight railroads operating in North America.  The AAR promulgates and publishes standards and rules that affect many aspects of railroad operations, including rules that govern the maintenance and repair of all types of railcars used on North American railroads ("AAR Rules").  These rules are published in AAR's manuals.  The AAR Field Manual contains rules that establish standards for the repair and maintenance of railcars.  The AAR Office Manual contains the default procedures that railroads and their agents are to follow when billing railcar owners for repairs to their cars and the default procedures that railcar owners are to follow to dispute such billing.  Plaintiff is subject to the AAR Rules.

Defendant Schuykill Rail Car Inc. ("Defendant"), a Pennsylvania corporation that has its principal place of business within the Middle District of Pennsylvania, is an entity that owns a fleet of railcars that it leases to others.  Defendant is similarly subject to the AAR Rules.

2

Pursuant to the United States Federal Railroad Administration ("FRA") and AAR, railroad personnel must perform a series of safety-related inspections on every railcar that enters a rail yard before the railcar is permitted to leave the rail yard, a procedure that is governed by AAR and FRA rules.  If railroad personnel discovers damaged or defective components on a railcar, it must follow the rules that govern the repair or replacement of that component.  In many cases, the railroad personnel will repair the damaged or defective component so the railcar can be safely used to transport freight and send a billing invoice to the railcar's owner.  The AAR Rules set forth the procedure for the submission and dispute of billing invoices.

Specifically, after an invoice is prepared, the railroad is required to transmit it electronically to Railinc Corp. ("Railinc"), a wholly owned subsidiary of AAR, at which time Railinc audits the invoices and places those invoices that pass muster on the Car Repair Billing Data Exchange System for distribution to the railcar owner.  An invoice that fails Railinc's audit is returned to the submitting entity for correction.

It is undisputed that, between 2008 through August 2013, Plaintiff, as a rail yard operator, submitted 150 invoices to Defendant through TTX Company ("TTX"), its management service, purporting to correspond to repairs made on Defendant's railcars.  These invoices, which total approximately $280,811.70,[1] remain outstanding.  (*See* Doc. 30-4, ¶ 6.)  Defendant does not dispute that it owes

---

[1]  Defendant disputes the total calculated by Plaintiff.  In support of its total, Plaintiff submits an accounts receivable aging analysis prepared by TTX that represents $250,441.42 and $30,307.28 is outstanding.  (*See* Doc. 30-4, pp. 8-9 of 9.)  Although Defendant calculates the sum of the outstanding invoices to be $277,364.53(Doc. 33, ¶ 14), it provides no factual support for its representation.  Accordingly, the court accepts Plaintiff's factually supported calculation in lieu of Defendant's unsupported figure.

$134,623.44 of this amount (Doc. 30, ¶ 28; Doc. 33, ¶ 28), but does dispute the remaining $146,188.26 (Doc. 30, ¶ 26; Doc. 33, ¶ 26).

Plaintiff's motion centers on the applicability of the AAR Rules, a concept not set forth in its pleadings.  Rule 112.H sets forth the procedures for preparing, processing, submitting, auditing, and disputing invoices, and provides, in pertinent part, as follows:

**H.        Invoice Processing and Auditing Regulations**

\*    \*    \*

3.    All invoices shall be passed for payment unless net amount of errors or questionable charges exceeds 10% when total invoice amount is $10,000 or less; exceeds 7.5% when total invoice amount is between $10,001 and $200,000; or exceeds 5% when total invoice amount is over $200,000.

a.    The unpaid invoice *must be returned to the Billing Party no later than 60 days from availability of the data* (as defined in Rule 112.H.2).  The returned invoice must be accompanied by documentation that clearly describes the reason that the invoice has been returned unpaid and quote rule basis for exception.

AAR Rule 112.H.3.a (emphasis supplied).  (Doc. 30-2, p. 9 of 16.)  Thus, for a railcar owner to dispute an invoice under this section, it must do so within sixty days. Defendant was aware of this provision for invoices that are disputed pursuant to Rule 112.H.

However, as highlighted by Defendant, the foregoing dispute procedure set forth in Rule 112.H applies only when the contracting parties do not agree to an

alternative procedure.  AAR Rule A provides that the AAR Rules are formulated "with the intent of . . . [e]stablishing that [the AAR Rules] are not intended to cover other independent agreements entered into by subscribers concerned.  Nothing in [the AAR] Rules shall interfere with the right of any subscriber to enter into bilateral agreements with any other subscriber or subscribers."  AAR Rule A.  (Doc. 33-1, p. 2 of 2.)  Thus, the AAR Rules specifically contemplate contracting parties to agree to their own procedures.  Defendant argues that, through the parties' course of conduct, they bilaterally agreed to extend the time in which Defendant could dispute a submitted invoice beyond the schedule set forth in Rule 112.H.3.a.

David Gamble, President of Defendant, stated that Plaintiff, through TTX, considered billing disputes to invoices submitted outside the sixty day window, and both accepted and adjusted repair invoices in response to Defendant's billing disputes submitted outside the provisions set forth in the AAR Rules.  (Doc. 33-2, ¶¶ 20-21.)  Importantly, according to Gamble, "neither [Plaintiff] nor TTX ever rejected a dispute to a [Plaintiff] repair bill because the dispute was not made within sixty days after the billing information became available."  (*Id.* at ¶ 17; *see* Doc. 33, ¶¶ 39-42.)  In his deposition, Gamble further outlined the bases for Defendant's disputing certain invoices, which included disputes arising from the duplication of charges and disputes based on his belief that the work charged was impossible due to the nature of the railcars.  (*See generally*, Doc. 30-3.)

**B.**       <u>**Procedural History**</u>

Plaintiff commenced this action on May 24, 2013, by filing a single-count complaint for breach of contract in this court on the basis of diversity.  (Doc. 1.)  On June 14, 2013, Defendant filed an answer with affirmative defenses and two counterclaims.  (Doc. 8.)  On October 29, 2014, Plaintiff filed an amended complaint for the purpose of adding additional claims for unpaid railcar repairs that had accrued since the commencement of the action.  (Doc. 17-1.)  Plaintiff's amended complaint consisted of the following seven substantive paragraphs:

5.      [Defendant] provides various services to owners of railcars used to transport freight including the processing and payment of invoices for services rendered by railroads and their agents in repairing and maintaining those railcars ("Railcar Repair Invoices").

6.      Upon information and belief, [Defendant] has agreements in place with owners of railcars, including but not limited to Schuylkill Railcar, L.P., Genesee & Wyoming, Inc., Genessee Valley Transportation Co., Inc., and North Shore Railroad Company (collectively, "the Car Owners"), pursuant to which [Defendant] has agreed to accept, process and pay Railcar Repair Invoices on behalf of the Car Owners.

7.      [Plaintiff] has agreements in place with [Defendant] pursuant to which [Defendant] has agreed to accept, process, and pay on behalf of the Car Owners those Railcar Repair Invoices issued by [Plaintiff] for services rendered in connection with the repair or maintenance of the Car Owners' railcars.

8.      Beginning in 2008 and continuing through the present, [Plaintiff] or its agent has submitted 150

> Railcar Repair Invoices to [Defendant] for work performed by [Plaintiff] or its agent in connection with the repair or maintenance of the Car Owners' railcars.
>
> 9.      The afore-mentioned invoices currently total $280,811.70.
>
> 10.     [Plaintiff] has demanded that [Defendant] process and pay those invoices in full, but [Defendant] has refused.
>
> 11.     [Defendant]'s refusal to pay the outstanding invoices submitted by [Plaintiff] is a breach of its agreement with [Plaintiff] to pay the Railcar Repair Invoices.

(Doc. 17-1, ¶¶ 5-11.)  On October 29, 2013, Defendant filed an amended answer with affirmative defenses and two counterclaims against Plaintiff.  (Doc. 18-1.)  On November 4, 2013, Plaintiff filed an answer to Defendant's amended counterclaims. (Doc. 19.)  AAR Rule 112.H is not mentioned in any of the pleadings.

On March 1, 2014, Plaintiff filed the instant motion for summary judgment (Doc. 29) and a statement of facts (Doc. 30), followed by a brief in support on March 11, 2014 (Doc. 31).  On April 1, 2014, Defendant filed a brief in opposition (Doc. 32) and a response to Plaintiff's statement of facts (Doc. 33).  On April 15, 2014, Plaintiff filed its reply to Defendant's opposition.  (Doc. 36.)  Thus, this issue has been fully briefed and is ripe for consideration.

## II.      __Legal Standard__

Rule 56 of the Federal Rules of Civil Procedure directs the court to enter summary judgment in favor of the movant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R Civ. P. 56(a). Thus, summary judgment is appropriate when the material facts are undisputed and the only issue before the court is a pure question of law.

The initial burden of demonstrating the absence of a genuine issue of material fact falls on the moving party. The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Pollock v. Energy Corp. of Am.*, Civ. No. 10-cv-1553, 2012 WL 6929174, *2 (W.D. Pa. Oct. 24, 2012) (citing *Anderson*, 477 U.S. at 250). The nonmovant must show more than the mere existence of a scintilla of evidence for elements on which it bears the burden of production, because bare assertions, conclusory allegations or suspicions are insufficient to defeat summary judgment. *Taylor v. Harrisburg Area Cmty. Coll.*, Civ. No. 12-cv-0169, 2014 WL 347036, *7 (M.D. Pa. Jan. 30, 2014) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); *see also Anderson*, 477 U.S. at 252. "Thus, summary judgment is appropriate when the record, taken as a whole and viewed in the light most favorable to the nonmovant, could not lead a rational trier of fact to find for the nonmoving party." *See U.S. ex rel. Green v. Schuykill Prods.*, Civ. No. 10-cv-0040, 2014 WL 2154664, *3 (M.D. Pa. May 22, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief

– that is not genuinely in dispute and treating the fact as established in the case."
Fed. R. Civ. P. 56(g).

## III.        <u>Discussion</u>

In support of its motion for summary judgment, Plaintiff has submitted undisputed evidence sufficient to establish that it submitted 150 invoices purporting to represent the cost for work performed on Defendant's railcars, that Defendant received the invoices for the work performed according to the AAR Rules, that Defendant failed to pay the amounts set forth on the invoices, that over sixty days had passed between the date the invoices were received by Defendant without a notice of dispute being submitted, and that the total amount of the outstanding invoices is $280,811.70.  Defendant acknowledges it has not paid the 150 invoices and concedes that 60 of those invoices, totaling $134,623.44, remain due and outstanding.  However, Defendant argues that it disputes the validity of the remaining 90 invoices.  In response, Plaintiff argues that, because Defendant has not disputed the invoices within sixty days as required by Rule 112.H.3.a, Defendant has waived its ability to do so regarding the outstanding invoices.  Defendant replies that the parties' course of conduct modified Rule 112.H.3.a's sixty day window, inasmuch as Plaintiff accepted disputes beyond sixty days from the date the invoice was available.  Plaintiff argues that Defendant waived the ability to assert contract modification as an affirmative defense because it failed to raise it in a responsive pleading.

As an initial matter, because Defendant does not dispute the charges reflected on sixty of the 150 invoices referenced in the complaint (Doc. 30, ¶ 27

("SRC does not dispute the charges reflected on the remaining invoices."); Doc. 33, ¶ 27 ("Undisputed.")), the court will grant judgment in Plaintiff's favor as to those invoices in the amount of $134,623.44 (Doc. 30, ¶ 28; Doc. 33, ¶ 28; *see also supra* n.1).  Thus, the remaining discussion applies only to the remaining ninety invoices, which total $146,188.26.

The first issue is whether Defendant's failure to plead contract modification as an affirmative defense in its amended answer waived its ability to argue that the parties' course of conduct modified the sixty day window for disputes as set forth in Rule 112.H.3.a.  The court concludes that, although contract modification is generally an affirmative defense that must be pleaded in a responsive pleading if it is to be asserted by a defendant, Defendant did not waive the ability to assert such a defense here.

In diversity of citizenship cases, state law defines the nature of the defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised.  "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defenses."  Fed. R. Civ. P. 8(c).  The defenses set forth in Rule 8(c) were not intended to be an exhaustive listing.

Matters treated as affirmative defenses under state law are generally treated the same way by federal courts sitting in diversity.  *Elliott & Frantz Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 321 n.6 (3d Cir. 2006).  A defense must be raised in the defendant's answer if it will defeat the plaintiff's claim, even if all the allegations in the complaint are true.  *See* 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1270, 561 (3d ed. 2004).  "Novation is an affirmative defense" and the party raising the defense has the burden of proving that the parties intended to discharge

the earlier contract. *Publicker Indus. Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1071 (3d Cir. 1979) (citing *Jacobson & Co. v. International Env't. Corp.*, 235 A.2d 612, 617 (Pa. 1967) ("[H]e who asserts a novation must properly plead and prove it.")).  Similarly, a defense based on the existence of an agreement that varies the terms of the written contract on which the plaintiff's suit is based must be set out in the answer if it is to be available later at the trial.  *See Allegro v. Rural Valley Mut. Fire Ins. Co.*, 112 A. 140, 141 (Pa. 1920).

Although failure to raise an affirmative defense by a responsive pleading or by appropriate motion generally results in the waiver of that defense, the Federal Rules of Civil Procedure grant the court the authority to permit amendment to a responsive pleading at any time to include an affirmative defense. Fed. R. Civ. P. 15(a)(2).  Unless the opposing party will be prejudiced, leave to amend should generally be allowed.  *See Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).  Moreover, under Rule 15(b), the pleadings may be amended during or after trial to conform to the evidence being presented.  *See* Fed. R. Civ. P. 15(b).  Thus, failing to plead an affirmative defense is not necessarily fatal to the defendant's ability to assert it later during the proceedings.

Plaintiff argues that Defendant waived its ability to assert contract modification as an affirmative defense, and accordingly, that the court should not consider the course of conduct between the parties to alter the default time line for disputing invoices set forth in Rule 112.  The court disagrees.

While it is true Defendant did not assert contract modification as an affirmative defense in its responsive pleading, it did not need to do so based on the pleadings in this case.  Absent from Plaintiff's amended complaint is virtually any

reference to the AAR Rules.  Nowhere in the amended complaint was Defendant placed on notice that Plaintiff contended that Rule 112.H.3.a operated to conclusively establish that Defendant conceded the validity of the invoices.  Indeed, Plaintiff simply alleged that a contract existed between the parties; it did not allege that the default sixty day window was part of the essential terms of the agreement. Accordingly, Defendant was not put on notice of the need to plead its affirmative defense of contract modification.

Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish "(1) the existence of a contract, *including its essential terms*, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (emphasis supplied) (citing *CoreStates Bank N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Plaintiff failed to plead that Rule 112.H.3.a was an essential part of its agreement.  Moreover, if the parties' course of conduct did in fact modify the default sixty day window, an issue discussed *infra*, Defendant would have no reason to believe that Plaintiff was invoking an ineffective provision of the AAR Rules, and thus, would have no reason to assert an affirmative defense to the ineffective provision in response.  Accordingly, the court concludes that Defendant did not need to plead contract modification based on the cursory pleading set forth by Plaintiff in its amended complaint.

Having concluded that Defendant's failure to plead its contract modification defense in its answer does not operate as a waiver, the court must next address whether Plaintiff has produced evidence sufficient to demonstrate it is entitled to judgment as a matter of law on the ninety invoices that remain

outstanding.  In addressing this issue, the court must determine whether Defendant has set forth evidence sufficient for a reasonable jury to conclude that its course of conduct with Plaintiff modified Rule 112.H.3.a's sixty day requirement.  The court notes that there exists no genuine issue as to whether Plaintiff submitted the ninety invoices for payment that total $146,188.26 and that Defendant has not paid or disputed them within the sixty days set forth by Rule 112.H.3.a.  If the court concludes that Rule 112.H.3.a is in effect, it follows that Defendant has lost its opportunity to dispute the invoices and the court must find that Plaintiff is entitled to judgment as a matter of law.  However, if the record demonstrates that the course of conduct between the parties has modified Rule 112.H.3.a to permit Defendant to dispute the invoices beyond the sixty day window, Defendant may be able to defend the lawsuit by proving that the invoices are invalid.  For the following reasons, the court concludes that the record contains sufficient evidence for a reasonable jury to find that the parties' course of conduct permitted Defendant to submit disputes as to the validity of submitted invoices beyond the sixty day window, and, accordingly, Defendant is not foreclosed from disputing the validity of the remaining outstanding invoices.

"It is the well-settled law of Pennsylvania that a written contract may be modified by a subsequent oral agreement. . . . [and that the] modification may be accomplished by either words or conduct."  *First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir. 1987).  "While one party to a contract cannot modify its terms without the assent of the other parties, the fact of agreement as to a modification may be implied from a course of conduct in accordance with its existence."  *Judge v. Philadelphia Premium Outlets*, Civ. No. 10-cv-1553, 2012 WL

876755, *7 (E.D. Pa. Mar. 15, 2012) (quoting *United States v. LeCroy*, 348 F. Supp. 2d 375, 384 (E.D. Pa. 2004)); *see also Wisniewski v. Prudential Ins. Corp. of Am.*, 422 F.2d 154, 157 (3d Cir. 1970) (looking at the insured's course of conduct in determining whether the written terms of the contract were modified).  A contract may be validly modified if the party which did not propose the change is "shown to acquiesce in the modification through a course of conduct consistent with acceptance." *LeCroy*, 348 F. Supp. 2d at 384 (quoting *International Bus. Lists Inc. v. American Tel. & Tel. Co.*, 147 F.3d 636, 641 (7th Cir. 1998)).  "[T]he subsequent modification must be clearly established." *OneBeacon Ins. Co. v. Aviva Ins. Ltd.*, Civ. No. 10-cv-7498, 2013 WL 2147958, *7 (E.D. Pa. May 17, 2013) (quoting *Betterman v. American Stores Co.*, 80 A.2d 66, 71 (Pa. 1951)).

   Given this record, a genuine issue of material fact exists as to whether, through a course of conduct, the timing requirement in Rule 112.H.3.a was modified to permit Defendant to dispute invoices outside the sixty day window.  First, the AAR Rules unequivocally provide that the procedure set forth therein is in effect unless otherwise agreed to by the parties.  Indeed, the AAR Rules contemplate the parties reaching an alternative procedure.  Second, in his affidavit, Gamble stated that Plaintiff, through TTX, considered billing disputes to invoices submitted outside the sixty day window, and both accepted and adjusted repair invoices in response to Defendant's billing disputes submitted in violation of the AAR Rules, thus acquiescing to the modification. (Doc. 33-2, ¶¶ 20-21.)  Importantly, according to Gamble, "neither [Plaintiff] nor TTX ever rejected a dispute to a [Plaintiff] repair bill because the dispute was not made within sixty days after the billing information became available." (*Id.* at ¶ 17; *see* Doc. 33, ¶¶ 39-42.)  Should the parties' course

of conduct establish that Rule 112.H.3.a was modified in this regard, then it must be determined whether Defendant had a contractual obligation to pay the invoiced amounts.

Having determined that the record contains evidence that may tend to support a finding that Plaintiff and TTX's acceptance of disputes beyond sixty days establishes the parties' intent to modify the default timing requirements set forth in Rule 112.H.3.a, the court must next determine whether the record nevertheless conclusively establishes Plaintiff's entitlement to payment on the outstanding ninety invoices. After a thorough review, the court determines that there exists a genuine issue of material fact regarding Plaintiff's entitlement to payments on the disputed ninety invoices, and, accordingly, the court concludes that Plaintiff is not entitled to judgment as a matter of law as to these invoices.

Jefree Turrentine, the Manager of Credit and Receivables for TTX, stated that the unpaid invoices are in compliance with industry rules and regulations and reflect the repair and maintenance of Defendant's railcars. (*See* Doc. 30-4.) However, throughout his deposition, Gamble discusses the bases for Defendant's disputing the invoices. Although it is beyond the province of the court to discuss the strength or weakness of the proffered bases for Defendant's disputes, it does note that there is arguable evidence that at least some of the outstanding invoices are inaccurate, inasmuch as they included duplicate charges for work performed only once or charges for work that was impossible to be performed due to the nature of the railcar at issue. Thus, while it is undisputed that the invoices were never paid, it remains at issue whether Defendant in fact had the legal obligation to pay the amounts stated on the invoices. This is a question that relies on the resolution of

whether the parties' course of conduct modified Rule 112.H.3.a and established a dispute resolution process that permitted a dispute to be submitted outside the default sixty day window and whether the invoices are accurate and valid.  These are questions better suited for the trier of fact.

**IV.**     **<u>Conclusion</u>**

Based on the foregoing, the court concludes that there exists no genuine issue of material fact as to the sixty outstanding invoices that Defendant does not dispute it is obligated to pay.  Therefore, Plaintiff is entitled to judgment as a matter of law regarding that portion of its claim.  However, the court concludes that there exists a genuine issue of material fact regarding both whether the parties' course of conduct operated to supplant Rule 112.H.3.a's sixty day dispute window and whether Defendant is legally obligated to pay the amount set forth on the outstanding invoices.  Accordingly, it is not clear the Plaintiff is entitled to judgment as a matter of law regarding the ninety disputed outstanding invoices.

An appropriate order will be issued.

_s/Sylvia H. Rambo_____<br>
United States District Judge

Dated:  June 24, 2014.